# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | | |
|---|---|---|
| **Defense Training Systems and Katmai Government Services, LLC,** | ) ) ) | |
| Plaintiffs, | ) ) | 3:13-cv-172 JWS |
| vs. | ) ) | ORDER AND OPINION |
| **International Charter Inc. of Wyoming and Brian J. Boquist,** | ) ) ) ) | [Re: Motion at docket 12] |
| Defendants. | ) ) | |

## I. MOTION PRESENTED

At docket 12, defendant Brian J. Boquist ("Boquist") moves for dismissal of the claims against him filed by plaintiffs Defense Training Systems ("DTS") and Katmai Government Services, LLC ("KGS") (collectively "Plaintiffs") for want of personal jurisdiction. Boquist's supporting memorandum is at docket 13, and his supporting declaration is at docket 14. Plaintiffs' response is at docket 21 with an errata at docket 23. Attached as an exhibit to Plaintiffs' response is the declaration of David Stephens at docket 21-1. Boquist's reply is at docket 33, and his additional declaration

is at docket 32. No party has requested oral argument, and it would not assist the court.

## II. BACKGROUND

Plaintiffs' complaint alleges that DTS is a division of ILSC Holdings, L.C. ("ILSC"), a Florida limited liability company and that the majority owner of ILSC is KGS, which is an Alaska limited liability company. According to the complaint, DTS is in the business of providing "role player" and training services to the United States military. The complaint further alleges that ILSC has many office locations, including one in Anchorage, Alaska, while KGS maintains its principal office in Anchorage. It is undisputed that Boquist resides in Oregon and that he is the Executive Vice-President of his co-defendant International Charter Inc. of Wyoming ("ICI"), which is a Wyoming corporation whose offices are in Cheyenne, Wyoming.

Plaintiffs' complaint, in the lamentable "kitchen sink" fashion so popular in current pleading practices, sets out eight distinct claims for relief, but at the heart of each is the proposition that defendants defamed plaintiffs. Six of the eight claims sound in tort while two sound in contract.[1] The complaint seeks to recover compensatory and punitive damages. The case was originally filed in state court, but timely removed to this court which has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332.

---

[1] The first claim for intentional interference with a contract, the second claim for intentional interference with economic advantage, the third claim for defamation, the fourth claim for intentional misrepresentation, the fifth claim for negligent misrepresentation, and the eighth claim seeking punitive damages are all tort claims. The sixth claim for breach of the contract's non-disparagement provision, and the seventh claim for breach of the contract's implied covenant of good faith and fair dealing are contract claims.

-2-

This lawsuit relates to a contract between DTS and the United States Marine Corps ("USMC") to provide services at Camp Lejeune, North Carolina, and elsewhere, identified as Prime Contract Number M67854-08-D-8028 ("the Contract") and a related subcontract between DTS and ICI as the subcontractor, Subcontract DTS-08-D-001 entered May 1, 2008 ("the Subcontract"), to provide services at Camp Lejeune.

Plaintiffs' complaint alleges that Boquist is an Oregon resident and that he is an officer of ICI,[2] a Wyoming corporation. The complaint alleges that there is personal jurisdiction in Alaska,

> because of the substantial contacts between Defendants and the State of Alaska, including but not limited to the formation of the subcontract between DTS and ICI in Alaska, the personal presence of Boquist in Alaska in connection with the subcontract, the performance of the portion of the subcontract in Alaska, the payment of amounts due under the Subcontract maintained in Alaska, and the performing of acts outside of Alaska for the purpose and with the intent of causing harm within Alaska.[3]

The following alleged facts are taken from Boquist's two declarations:

1. Boquist resides in Dallas, Oregon, which has been his primary residence since January 1, 1997.

2. Boquist has never resided in Alaska.

3. Neither Boquist nor any entity controlled by him, in which he has an ownership interest, or which employees him:
    a. has an office, registered agent, officer, director, employee or agent in Alaska;
    b. holds any license, charter, or permit issued by any governmental authority in Alaska;
    c. has paid or is required to pay taxes in Alaska;
    d. maintains a bank account in Alaska;
    e. has any type of office or other facility in Alaska;

---

[2]Complaint, doc. 1-1, at ¶ 4.

[3]*Id.* at ¶ 5.

      f.  owns or lease any real property in Alaska;
      g.  advertises in any publication aimed primarily at Alaska;
      h.  has an answering service, mailing address, directory listing or phone number in Alaska;
      I.  has any dealer or distributor agreement for products in Alaska.

4. Boquist performed work for ICI pursuant to the Subcontract, but was not himself a party to either the Contract or the Subcontract. None of the work he performed was performed in Alaska.

5. ICI performed all of its work under the Subcontract and related Contract outside Alaska.

6. DTS' webpage gives its address as 12001 Science Drive in Orlando, Florida, and lists a Florida phone number, (407) 281-6093.

7. KGS identifies its "Live Training Headquarters" as having the same address and phone number in Florida as those shown on the DTS webpage.

8. All of the training performed by ICI under the Subcontract was performed outside Alaska, as was the work done for ICI by Boquist.

9. DTS had other significantly smaller subcontracts with ICI involving military training exercises, of which two involved work at or near Fort Greely, Alaska, in 2007 and 2010. Less than 1% of all the work performed by ICI as a subcontractor to DTS has been performed in Alaska.

10. Boquist was one of three persons at ICI who had contacts with ICI about subcontracts. Boquist communicated with ICI about the Subcontract and other contracts. Boquist does not consider himself the "principal" contact for ICI with DTS.

11. The "vast majority" of Boquist's contacts with DTS were with R. David Stephens, Ed Coyle, Gary Wood, and Mark Lancer. Stephens, Coyle, and Woods currently reside in and primarily work in Florida. Lancer, who was DTS Project Manager for the Subcontract, works primarily in North Carolina and Florida.

12. The "vast majority" of Boquist's telephonic contacts with Stephens, Coyle, Wook, and Lancer were made while they were in Florida.

-4-

13. Boquist knew there was a relationship between DTS and KGS and that KGS was an Alaska Native Corporation, but the "vast majority" of his dealings with DTS and KGS were in Oregon, Florida, and North Carolina.

14. Boquist attended one Subcontract program management review in Alaska during June of 2008 at the request of the USMC contracting officer and program manager.

15. Boquist denies he attended program management reviews in Alaska every year for 3 or 4 years as declared by Stephens.

16. Boquist attended a meeting with Stephens in Anchorage in January 2011.

17. Boquist denies he made about "a dozen visits to Alaska to negotiate/plan contracts" as declared by Stephens.

18. Boquist denies he made about "five trips [to Alaska] for planning/meeting purposes" relating to the Subcontract as declared by Stephens.

19. Boquist attended some "marketing presentations for U.S. Army opportunities that occurred in Alaska, which were unrelated to the Subcontract." DTS was present at some, but not all of the presentations.

20. After DTS' August 2007 recommendation that ICI and DTS obtain firearms for protection from bears at sites related to work around Fort Greeley, ICI personnel brought two firearms to Alaska and purchased a third in Alaska. To comply with federal firearm regulations, the firearms were all owned by individuals, including Boquist. When the Fort Greely work concluded, the firearms were transferred to DTS for storage in Alaska for possible future use. In July 2013, the firearms were sent by DTS to an Oregon gun shop where Boquist picked them up.

The following alleged facts are taken from the Declaration of David Stephens:

A. Stephens is the CEO of KGS, which is the majority owner of ILSC, a Florida limited liability company. DTS is a division of ILSC.

B. KGS maintains its corporate headquarters in Alaska and is owned by Ouzinkie Native Corporation located in Alaska. KGS provides management and administrative services to DTS, which maintains its corporate headquarters and administrative offices in Alaska.

C. KGS' subsidiaries, including DTS, have been and remain in the business of providing role player support services to the Armed Forces.

D.  In addition to the Subcontract, DTS and ICI have worked together on other contracts over a period of seven years, and jointly have conducted 300 training missions.

E.  Boquist was the principal point of contact for DTS with ICI throughout the relationship.

F.  Stephens had "countless" telephone conversations with Boquist when Stephens was in Alaska and received calls Boquist placed to him at Alaska phone numbers.

G.  Boquist performed substantial work in Alaska related to "DTS/ICI ongoing contractual relationship."

H.  Boquist's activities in Alaska included about one program management review each year for 3 or 4 years; a dozen trips to Alaska to negotiate/plan contracts; and five trips to Alaska for planning/meeting purposes.

I.  Boquist was in Alaska in connection with work at Fort Greely and he was the Mission Manager for that work.

J.  Boquist brought personal firearms to Alaska which were stored for him in Anchorage at his request.

K.  Boquist has been present in the DTS and KGS Alaska offices many times and knows of their Alaska presence.

Boquist's motion is premised on the proposition that this court cannot adjudicate the claims against him, because this court lacks personal jurisdiction over him.  In his view–a view not shared by Plaintiffs–the facts disclose that this court lacks both general personal jurisdiction and specific personal jurisdiction.

### III.  STANDARD OF REVIEW

For this court to have personal jurisdiction over a nonresident defendant, there must exist a statutory basis for jurisdiction and the nonresident defendant must have

sufficient "minimum contacts" with the forum state such that due process is satisfied.[4] This court applies the law of the forum state to determine whether a statutory basis exists.[5] Alaska's jurisdictional statute, AS 09.05.015, is interpreted by the Alaska Supreme Court to provide jurisdiction to the fullest extent allowed by the Constitution.[6] Therefore, personal jurisdiction may be asserted so long as due process is not offended.

There are two types of personal jurisdiction, general jurisdiction and specific jurisdiction.[7] General jurisdiction exists "when a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic.'"[8] In the absence of general jurisdiction, the court may assert personal jurisdiction if specific jurisdiction exists. The Ninth Circuit uses a three-part test to determine whether specific jurisdiction exists:

> (1) The nonresident defendant must purposely direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of

---

[4]*Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (jurisdiction must be consistent with "traditional notions of fair play and substantial justice").

[5]*Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 416 (9th Cir. 1997).

[6]*Morrow v. New Moon Homes, Inc.,* 548 P.2d 279, 294 (Alaska 1976).

[7]*Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir. 1998).

[8]*Id.*

-7-

jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.[9]

The party seeking to assert jurisdiction bears the burden of showing the first two prongs are met. If it does so, then the burden shifts to the party opposing the exercise of jurisdiction to present a "compelling" case that exercising personal jurisdiction would be unreasonable.[10]

The Ninth Circuit has indicated that "purposeful availment" is to be used in cases which sound primarily in contract.[11] On the other hand, personal jurisdiction in a case based on a tort claim "may attach if the defendant's conduct is aimed at or has an effect in the forum state."[12]

Speaking more generally, the party seeking to have the court exercise personal jurisdiction bears the burden of establishing that personal jurisdiction exists.[13] When there has been no evidentiary hearing, dismissal is proper only if the plaintiff has not made a prima facie showing that personal jurisdiction exists.[14] In determining whether the plaintiff has made such a prima facie showing, "uncontroverted allegations in [the] complaint must be taken as true."[15] However, allegations in the complaint are not

---

[9]*Wash. Shoe Co. v. A-Z Sporting Goods Inc.,* 704 F.3d 668, 672 (9th Cir. 2012) (citations omitted).

[10]*Id.*

[11]*Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)

[12]*Panavision,* 141 F.3d at 1321.

[13]*Fields v. Sedgwick Associated Risks, Ltd.,* 796 F.2d 299, 301 (9th Cir. 1986).

[14]*Id.*

[15]*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

-8-

entitled to the presumption of validity when contradicted by a declaration or affidavit.[16] "[C]onflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists."[17]  Even if the plaintiff succeeds in establishing a prima facie case for personal jurisdiction, the district court may order an evidentiary hearing or the issue may be raised again at trial, and the plaintiff will have to demonstrate personal jurisdiction by a preponderance of the evidence.[18]

## IV.  DISCUSSION

### A.  General Jurisdiction

Boquist is not domiciled in Alaska, so general personal jurisdiction over him may be exercised by this court only if his activities in Alaska are substantial or continuous and systematic.  The complaint's only allegations of fact tying Boquist to Alaska are that he was present in Alaska in connection with the Subcontract.  These allegations are too vague to be of significance.  The complaint does not allege how often, for how long, or for what particular purpose Boquist might have been in Alaska on any given occasion. There are more specific allegations of fact regarding Boquist's activities in Alaska in Stephens' declaration.  The declaration asserts that Boquist called Alaska and received calls from Alaska over a period of seven years; that he performed work associated with DTS contracts while physically present in Alaska; and that he visited Alaska about

---

[16]*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1284 (9th Cir. 1977).

[17]*Am. Tel. & Tel. Co.,* 94 F.3d at 588 (internal quotations omitted).

[18]*See Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990).

twenty times to conduct business. However, the most significant of Stephens' statements are directly contradicted by statements in Boquist's declarations. For purposes of determining whether Plaintiffs have put forth a prima face case of general jurisdiction, the court must believe what is contained in Stephens' declaration. Even doing so, the court concludes that Plaintiffs have not shown enough contacts to establish general jurisdiction over Boquist. "The standard for establishing general jurisdiction is 'fairly high' . . . and requires that the defendant's contact be of the sort that approximate physical presence."[19] DTS has not met this high standard because while Stephens' declaration shows that Boquist was in Alaska twenty times for work purposes, had numerous phone calls with parties in Alaska, and stored his firearm in Alaska, it does not provide sufficient detail to allow the court to conclude that these contacts are tantamount to Boquist's physical presence in the state.

**B. Specific Jurisdiction**

In this case there are both tort claims and contract claims. While the claims are closely related and really depend on allegedly defamatory actions taken by Boquist, it appears that the personal jurisdiction issue should be resolved by considering both the purposeful availment approach suitable for contract claims and the purposeful direction and effects approach used for tort claims. Unfortunately, important facts are in dispute. Taking the facts in Stephens' declaration as true, Plaintiffs have likely established a prima facie case to support specific jurisdiction. However, the court is troubled by the fact that the most significant points made by Stephens are directly contradicted by

---

[19]*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citations omitted).

-10-

Boquist. One of the parties is not being entirely truthful. Even if Plaintiffs have sufficiently established a prima facie case for personal jurisdiction, the matter could be raised again at trial, in which case Plaintiffs would have to demonstrate personal jurisdiction by a preponderance of the evidence. The court concludes that the more prudent and efficient course here, given the conflicting versions of jurisdictional facts, is to hold an evidentiary hearing early in the litigation so that no resources are wasted proceeding with litigation involving a defendant over which the court lacks jurisdiction.[20]

## V. CONCLUSION

For the reasons set forth above, the court concludes that an evidentiary hearing is necessary to resolve the personal jurisdiction issue. Because the assigned judge has other commitments which preclude conducting such a hearing as promptly as it should be conducted, responsibility for conducting an evidentiary hearing will be referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge shall schedule and conduct the evidentiary hearing, and then provide this court with proposed findings of fact and a recommendation for the disposition of the motion at docket 12. The Clerk of Court will please refer this task to one of the magistrate judges.

DATED this 12th day of December, 2013.



/S/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[20] *See Data Disc*, 557 F.2d at 1285 ("If the pleadings and other submitted materials raise issues of credibility or disputed questions of fact with regard to jurisdiction, the district court has discretion to take evidence at a preliminary hearing in order to resolve the contested issues.").

-11-